IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Henry Russell Smith, | ) | Civil Action No. 8:16-01554-BHH-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Nancy A. Berryhill, | ) | |
| Acting Commissioner of Social Security,) | | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"). For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

On January 30, 2013, Plaintiff filed an application for DIB alleging disability beginning January 19, 2013. [R. 170–71.] The claim was denied initially on June 19, 2013, [R. 106–10] and upon reconsideration on November 8, 2013, [R. 113–18] by the Social Security Administration ("the Administration").  Plaintiff filed a request for hearing before an

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

administrative law judge ("ALJ"), and on October 9, 2014, ALJ Thomas G. Henderson conducted a hearing on Plaintiff's claims. [R. 26–49.]

On November 25, 2014, the ALJ issued his decision finding that Plaintiff had not been under a disability within the meaning of the Social Security Act ("the Act") from January 19, 2013, through the date of the decision. [R. 11–20.] At Step 1[2], the ALJ found Plaintiff meets the insured status requirements of the Act through December 31, 2017, and had not engaged in substantial gainful activity since January 19, 2013, the alleged onset date. [R. 13, Findings 1 & 2.] At Step 2, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder, impulse control disorder, anxiety disorder (not otherwise specified) and lumbar degenerative disc disease. [R. 13, Finding 3.] At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. [R. 13, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found that Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Specifically, the claimant is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours in an 8-hour day except that the claimant can only occasionally climb ramps and stairs and crouch, kneel, stoop, balance, and crawl. He is limited to frequent handling and fingering. The claimant can never climb ladders, ropes, or scaffolds. The claimant must avoid all workplace hazards and is limited to simple, repetitive, routine tasks with no ongoing interaction with

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

the public. He can perform no fast-paced production work or work with rigid quotas.

[R. 15, Finding 5.] Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable to perform his past relevant work as a carpenter, small business owner, door installer, and roofer. [R. 19, Finding 6.] However, considering Plaintiff's age, education, work experience, RFC, and testimony of a vocational expert ("VE"), the ALJ identified jobs that existed in significant numbers in the national economy that Plaintiff could perform such as ticket distributor, housekeeper, and garment bagger. [R. 19, Finding 10.] Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from January 19, 2013, through the date of the decision. [R. 20, Finding 11.]

Plaintiff filed a request for review of the ALJ's decision with the Appeals Council, which denied review on March 10, 2016. [R. 1–6.] Plaintiff commenced an action for judicial review in this Court on May 13, 2016. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and contains multiple legal errors warranting the reversal and remand of the case. [*See* Doc. 17.] Specifically, Plaintiff contends the ALJ erred by failing to conduct a proper listing analysis [*id.* at 12–17], and failing to properly analyze Plaintiff's limitations in finding his RFC [*id.* at 17–21].

The Commissioner contends the ALJ's decision should be affirmed because there is substantial evidence of record that Plaintiff was not disabled within the meaning of the Act during the relevant time period. [*See* Doc. 18.] Specifically, the Commissioner

contends substantial evidence supports both the ALJ's listing analysis and RFC determinations. [*Id.* at 6–14.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to

determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual

5

functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is

6

material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

**APPLICABLE LAW**

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national

economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.  *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.  *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings

as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

**C.**   ***Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

**D.**   ***Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

**E.**   ***Other Work***

---

[4]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the

---

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II. Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III. Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is

unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making

the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds

that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable

> objective evidence, such as clinical or laboratory diagnostic
> techniques, the adjudicator must evaluate the disabling effects
> of a disability claimant's pain, even though its intensity or
> severity is shown only by subjective evidence. If an underlying
> impairment capable of causing pain is shown, subjective
> evidence of the pain, its intensity or degree can, by itself,
> support a finding of disability. Objective medical evidence of
> pain, its intensity or degree (i.e., manifestations of the
> functional effects of pain such as deteriorating nerve or muscle
> tissue, muscle spasm, or sensory or motor disruption), if
> available, should be obtained and considered. Because pain
> is not readily susceptible of objective proof, however, the
> absence of objective medical evidence of the intensity,
> severity, degree or functional effect of pain is not
> determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI. Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique

advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Listing Analysis**

Plaintiff contends that the ALJ erred because he met Listing 12.04. [Doc. 17.] He argues the ALJ failed to discuss paragraph A and that substantial evidence does not support the ALJ's paragraph B analysis. He alleges the ALJ cherry-picked only certain evidence and improperly ignored, or failed to sufficiently explain his rejection of, other evidence including medical opinions. The Commissioner, on the other hand, contends that the ALJ sufficiently explained the Listing analysis and substantial evidence supports the finding that Plaintiff was not disabled under the Act. The Court agrees with the Commissioner.

### *Criteria of the Relevant Listing*

This listing at issue in Plaintiff's objections is Listing 12.04. Listing 12.04 relates to major depressive disorder ("MDR") and requires an applicant to meet either paragraphs A *and* B *or* C of the Listing. Listing 12.04 impairments are so severe that they prevent all gainful activity (20 C.F.R. § 404.1525), and once a claimant's impairment satisfies Listing 12.04 requirements for at least a year he is deemed disabled without further assessment (20 C.F.R. § 404.1520(a)(4)(iii)).

Listing 12.04 provides as follows:

*12.04 Affective Disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

**A.**   Medically documented persistence, either continuous or intermittent, of one of the following:

   1.   Depressive syndrome characterized by at least four of the following:

* * *

   2.   Manic syndrome characterized by at least three of the following: or

* * *

   3.   Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

***And***

**B**.   Resulting in at least two of the following:

   1.   Marked restriction of activities of daily living; or

   2.   Marked difficulties in maintaining social functioning; or

   3.   Marked difficulties in maintaining concentration, persistence, or pace; or

   4.   Repeated episodes of decompensation, each of extended duration;

***Or***

**C.**   Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do

basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1.   Repeated episodes of decompensation, each of extended duration; or

2.   A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3.   Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Part 404, Subpart P, App. 1, § 12.04.

### The ALJ's Listing Analysis

In determining that Plaintiff's impairment failed to meet the requirements of Listing

12.04, the ALJ opined as follows:

In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has mild restriction. The claimant is able to drive, prepare simple meals, take care of pets, care for his children, shop for groceries and other household items, and mow the grass. (Exhibit 16E)

In social functioning, the claimant has moderate difficulties. The claimant stated that he attends Bible study weekly and also visits with friends weekly. (Exhibit 16E)

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. While the claimant reported a reduced attention span, he stated that he is able to follow simple instructions. (Exhibit 16E). He is also able to participate in a Bible study, pay bills, and handle a checking/savings account. (Exhibit 16E).
>
> As for episodes of decompensation, the claimant has experienced one to two episodes of decompensation, each of extended duration.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.
>
> I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

[R. 14.]

With respect to Plaintiff's mental limitations, the ALJ considered treatment notes from Plaintiff's inpatient stay in January 2013 for psychiatric treatment [R. 16]; his March 2013 treatment in the emergency department with complaints of increased anxiety [*id.*]; his December 2013 inpatient treatment for complaints of suicidal/homicidal thoughts lasting one day [R. 17]; his mental status exam in July 2014 resulting in normal findings [*id.*]; and office treatment notes reflecting generally mild symptoms [*id.*]. The ALJ considered opinions from medical treatment providers such as Dr. Francis Fishburne ("Dr. Fishburne") who examined Plaintiff in April 2013 and found that, based on his GAF score of 70, Plaintiff had some mild symptoms (e.g.,depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but that he was generally functioning pretty well, and noted no functional limitations on his work-related activities. [R. 18.] The ALJ also considered Dr. Emily

Cullen's ("Dr. Cullen") opinion that Plaintiff met Listing 12.04, but gave that opinion little weight finding that Dr. Cullen's determination that Plaintiff had marked difficulty in maintaining social functioning and marked difficulties in maintaining concentration, persistence, and pace was completely unsupported by Plaintiff's testimony and the remaining medical evidence of record.  [*Id.*]

### Discussion

To determine whether a claimant's impairments meet or equal a listed impairment, the ALJ identifies the relevant listed impairments and compares the listing criteria with the evidence of the claimant's symptoms. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (stating that without identifying the relevant listings and comparing the claimant's symptoms to the listing criteria, "it is simply impossible to tell whether there was substantial evidence to support the determination"); *Beckman v. Apfel*, No. WMN–99–3696, 2000 WL 1916316, at *9 (D.Md. Dec. 15, 2000) ("In cases where there is 'ample factual support in the record' for a particular listing, the ALJ must provide a full analysis to determine whether the claimant's impairment meets or equals the listing." (*quoting Cook*, 783 F.2d at 1172)). While the ALJ may rely on the opinion of a State agency medical consultant in conducting a listing analysis, 20 C.F.R. § 416.927(e)(2)(iii), the ALJ ultimately bears the responsibility for deciding whether a claimant's impairments meet or equal a listing, *id.* § 416.927(d) (2).

The regulations provide that the burden of establishing disability under the Listings is on the claimant.  *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(c); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir.1981).  The claimant must present medical findings equal in severity to every criterion in a listing.  *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). It is not enough that the claimant has the diagnosis of a listed impairment; he must also

evidence the requirements for the listing of that impairment. 20 C.F.R. § 416.925(d); *see Bowen v. Yuckert*, 482 U.S. 137, 146 and n. 5 (1987) (noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). Merely "coming close" to meeting a listing is not enough to establish equivalence, and a claimant cannot establish equivalence merely by showing that the overall functional impact of her combination of impairments was as severe as that of a listed, i.e., presumptively disabling, impairment. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). Instead, the claimant must present medical findings equal in severity to every criterion in a listing. *See id.*

Plaintiff challenges the ALJ's findings with respect to his 12.04 Listing analysis by arguing that the ALJ failed to find that Plaintiff met "paragraph A" criteria. [Doc. 17 at 12.] Additionally, Plaintiff also contends the ALJ cherry-picked evidence to find that Plaintiff failed to meet "paragraph B" criteria and disregarded Dr. Cullen's opinions that Plaintiff suffered from marked limitations in social functioning and in maintaining concentration, persistence and pace. [*Id.* at 16.] As previously stated, to meet Listing 12.04, a claimant must satisfy either 12.04 A *and* B *or* C. Here, Plaintiff has not carried his burden of explaining to the Court how he satisfies those requirements.

The ALJ identified Listing 12.04 as a relevant listing and identified the factors to be considered in analyzing Plaintiff's impairments under the listing with respect to "paragraph B" criteria. [R. 14.] The ALJ noted that, to satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in

22

maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. However, the ALJ found that Plaintiff had mild restrictions in activities of daily living; moderate difficulties in social functioning and in concentration, persistence and pace; and one episode of decompensation for an extended duration. [*Id.*]

With respect to Plaintiff's activities of daily living, the ALJ explained as follows:

> In an adult function report dated September 2013, the claimant described his activities of daily living, which include making coffee, walking around the yard, watching television, riding around in the car, and taking his medications. (Exhibit 16E). The claimant has children and stated that he occasionally cooks dinner for his family and helps with the children's hair. He also helps care for two pets. The claimant mows his lawn monthly. Daily, he walks and drives and can travel alone. He shops twice weekly for groceries and household goods, and stated that he is able to pay bills, count change, handle a savings account, and use a checkbook/money order. The claimant attends Bible study weekly and visits with/has lunch with friends weekly, as well. Functionally, the claimant stated that he can walk half a mile before needing to rest. While the claimant stated that he can pay attention for only two minutes, he also stated that he can follow simple instructions. The claimant's myriad activities of daily living, when viewed in conjunction with the other inconsistencies[6] regarding the claimant's allegations of pain and dysfunction, further limit the claimant's credibility in discussing his pain.

[R. 16.]

The ALJ also relied on Plaintiff's July 2014 mental status exam which documented normal findings, as well as September 2014 office notes which indicated that Plaintiff reported attending church; mowing his neighbor's grass in exchange for using his pool; as

---

[6] The ALJ pointed out that Plaintiff initially denied mowing grass or working part-time until confronted with his statement to Dr. Fishburne that he is working 20 hours per week and his report to his social worker. The ALJ found that these inconsistencies reduced Plaintiff's credibility with respect to his allegations of pain. [*See* R. 14.]

well as a GAF score indicating mild symptoms that did not cause marked impairment to his

work-related functioning. [R. 17.]  The ALJ also gave great weight to the opinion of Dr.

Fishbourne from April 2013 who noted as follows:

> On presentation, the claimant complained of anxiety,
> depression, spasms, and low back problems. At that time, the
> claimant reported that he was working as a self-employed
> contractor for 20 or less hours per week. The claimant noted
> that his health was generally pretty good. He stated that, on a
> typical day, he leaves for work around 9:00 a.m. and returns
> around one in the afternoon, when he watches television. The
> claimant had a driver's license and stated that he drove the day
> before. He is independent in his personal care and cooks full
> meals twice a week. The claimant reported that he takes some
> responsibility for his children. He uses a CPAP machine to
> sleep.
>
> He reported feeling depressed daily and that he is tired,
> shakes, has headaches, and feels spacy. He denied suicidal
> ideation and has never had a suicide attempt. The claimant
> reported going out in public two to three times per week and
> stated that crowds do not bother him.  He visits friends
> approximately twice per week and denied problems in
> interpersonal relationships.  The claimant reported getting
> along well with coworkers and supervisors.  He did report
> problems with concentration and memory but was able to
> understand and follow simple instructions without difficulty. On
> mental examination, the claimant was oriented in all spheres
> and attention and concentration were judged to fall grossly
> within normal limits, as was short-term memory. The claimant's
> thinking was clear and goal-directed and he reported that he
> sleeps 10 to 11 hours per day.  Dr. Fishburne noted that the
> claimant had mild difficulty performing verbal reasoning tasks
> and estimated that the claimant's intelligence may fall in the
> mildly mental retarded range of abilities. Judgment was
> appropriate to the claimant's level of intelligence.  Insight into
> his situation was noted to be fair.  Dr. Fishburne concluded that
> the claimant has anxiety disorder, not otherwise specified, and
> depressive disorder, but that his global assessment of
> functioning score was 70.  A score of 61 to 70 indicates that
> the claimant has some mild symptoms (e.g., depressed mood
> and mild insomnia) or some difficulty in social, occupational, or
> school functioning (e.g., occasional truancy, or theft within the

household), but that he is generally functioning pretty well, has some meaningful interpersonal relationships. Dr. Fishburne noted no functional limitations on the claimant's work-related activities.

[R. 17–18.]

While Plaintiff appears to rely solely on Dr. Cullen's opinion that Plaintiff suffered from marked limitations in social function and in concentration, persistence and pace, the ALJ explained his consideration of this opinion as follows:

> I note, first, that the issue of whether a claimant meets a Listing is reserved to the Commissioner. I note, also, that Dr. Cullen's determination that the claimant has marked difficulty in maintaining social functioning and marked difficulties in maintaining concentration, persistence, and pace is completely unsupported by the claimant's testimony and the remaining medical evidence of record.. . . Of significance, there are no treatment notes from Dr. Cullen in the medical evidence of record, although the claimant's social worker at MUSC did apparently refer the claimant to him. (Exhibit 18F).

[R. 18.]

Upon review of the evidence and the ALJ's decision, the Court finds that the ALJ's determination is supported by substantial evidence. The ALJ sufficiently explained his consideration of the evidence, the basis for his "paragraph B" findings, and his weighing of the medical evidence. Other than disagreeing with the ALJ's findings, Plaintiff failed to point to any evidence of record that was not considered by the ALJ or any error in the application of the law. Furthermore, Listing 12.00(c) advises that when evaluating Paragraph B criteria, a "marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis. *See* §§ 404.1520a and 416.920a." The ALJ properly considered

25

Plaintiff's activities of daily living in determining that his degree of limitation did not seriously interfere with his ability to function independently, appropriately or effectively on a sustained basis. Plaintiff has pointed to no evidence of record establishing this degree of limitation.

Further, the Court finds the ALJ properly explained his consideration of Dr. Cullen's opinion, which he found to be unsupported by Dr. Cullen's own treatment records as well as the record evidence. The law is clear that, if a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir.2001). However, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

Here, on October 8, 2014, Dr. Cullen provided an opinion in the form of a check-box document indicating Plaintiff met "paragraph B" requirements of marked difficulties in social functioning and in concentration, persistence and pace with respect to Listing 12.03(C) (schizophrenic, paranoid and other psychotic disorders), but not the initial factors required for the listing [R. 648–49], as well as "paragraph A" of Listing 12.08 (Personality Disorder) [R. 652] and "paragraph A" and "paragraph B" of Listing 12.04 (Affective Disorder) [R. 653–54], without any explanation or reference to supporting documentation. Dr. Cullen

provided a subsequent check-box form on October 19, 2015, finding Plaintiff met Listing 12.04, "paragraph A" and "paragraph B." [R. 656–57.] Again, Dr. Cullen provided no explanation regarding her findings and failed to reference any supporting medical findings.

A Psychiatric Review Technique form completed by Dr. Cullen on October 19, 2015, indicates, again, that Plaintiff met listing level severity for Listings 12.04 and 12.08 [R. 659], but the check-box form does not appear to contain any discussion of her findings. [*See* R. 662, 666.] *See Wright v. Astrue*, C/A No. 2:14-1999-TLW, 2015 WL 5036948, at *7 and n.4 (D.S.C. Aug. 26, 2015) (explaining that check-the-box medical opinions have limitations); *Jones v. Colvin*, C/A No. 0:12-1773-MGL, 2013 WL 4823174, at *5 (D.S.C. Sept. 9, 2013) (the force of a medical opinion on a check-the-box form may be diminished under certain circumstances). With respect to Listing 12.08 (Personality Disorder), Dr. Cullen discussed Plaintiff's poor impulse control, some cognitive impairments, relationship issues, and problems with being defensive and quick to anger. [R. 666.] It is unclear, however, how these findings informed her conclusions. Dr. Cullen also found that Plaintiff had marked limitations in activities of daily living, social functioning, and in maintaining concentration, persistence and pace, as well as three episodes of decompensation each of extended duration. [R. 669.] Dr. Cullen again discussed Plaintiff's depression and his immediate struggles in light of his family being evicted from their home, the significant amount of distressed caused by the eviction, and his having to do occasional odd jobs around the neighborhood to keep his family afloat. [R. 671.] However, Dr. Cullen provided no additional discussion in support of her findings.

The Court finds the ALJ appropriately discounted Dr. Cullen's findings with respect to the Listing analysis in light of the limited evidence presented and in light of conflicting

medical evidence, as cited by the ALJ. Accordingly, the Court declines to remand on the basis of the ALJ's listing analysis.

**RFC Determination**

Plaintiff challenges the ALJ's RFC finding arguing that the ALJ's RFC assessment is without sufficient written rationale to meet a substantial evidence standard. [Doc. 17 at 17.] Plaintiff contends that there are two key functions which would undermine the ALJ's RFC that were improperly considered. Specifically, Plaintiff argues the ALJ failed to explain his nominal limitation to "frequent handling and fingering" in light of Plaintiff's documented right-sided tremors. [*Id.* at 18.] Plaintiff argues that the ALJ noted evidence of Plaintiff's tremors, but failed to explain why he felt that they did not further impact his RFC. [*Id.*] The Commissioner, however, argues that substantial evidence supports the ALJ's RFC determination. The Court agrees with the Commissioner.

### *ALJ's RFC Analysis*

After reviewing and considering the medical evidence in the record, the ALJ found that Plaintiff retained the RFC to perform light work with the following additional limitations: only occasional climbing of ramps and stairs, and only occasional crouching, kneeling, stooping, balancing, and crawling; frequent handling and fingering; no climbing ladders, ropes, or scaffolds; must avoid all workplace hazards; and is limited to simple, repetitive, routine tasks with no ongoing interaction with the public, and no fast-paced production work or work with rigid quotas. [R. 15.]

The ALJ acknowledged that, on April 10, 2013, Plaintiff underwent a consultative examination by Dr. Adebola Rojugbokan ("Dr. Rojugbokan"), of Prime Care Family Practice, who noted that Plaintiff presented with complaints of lower back pain and

undiagnosed tremors which Plaintiff claimed had been present since his January 2013 mental health admission. [R. 17.] On examination, Dr. Rojugbokan noted tremors in his extremities, but they improved when Plaintiff was distracted. [*Id.*] A review of Dr. Rojugbokan's treatment notes indicate that, after being prescribed Ativan due to a hypertensive crisis, Plaintiff began having tremors in his right upper and lower extremities. [R. 472.] A nerve study and EEG were conducted by neurologist Dr. John Lucas ("Dr. Lucas"), but no adequate reason was provided for Plaintiff's tremors and he was eventually told that the tremors might be psychosomatic. [*Id.*] Dr. Rojugbokan noted that Plaintiff's ability to stand still and sit had been affected by his tremors, as well as his ability to move about, and his ability to handle objects as a result of his shakes. [*Id.*] On neurological exam, Dr. Rojugbokan noted that Plaintiff's cerebellar testing was normal; finger-to-nose was normal; heel-to-toe was normal; alternating hand motion was normal; gait was normal; however, Plaintiff had an uncontrollable tremor on the upper and lower extremities that improved gradually as Plaintiff was distracted. [R. 475.] Dr. Rojugbokan's impression was that Plaintiff "would be able to (*unable*) keep or maintain any job from a psychological stand point of view based on the way he is at this point," and would benefit from seeing a psychiatrist. [R. 476.] Dr. Rojugbokan also noted that, due to his tremors, Plaintiff would be "unable to perform any job that require[d] him to be on any height or handle any fine objects." [*Id.*]

On April 10, 2013, Plaintiff was seen by Dr. Skye DeBerry ("Dr. DeBerry") of Palmetto Primary Care Physicians ("PPCP") with complaints of psychogenic tremors in his right arm which began in January 2013. [R. 501.] Plaintiff characterized the quality of the tremors as "less" and the severity as "improved." [*Id.*] On April 12, 2013, Plaintiff was seen

by Dr. Lucas on follow up for his tremors. [R. 499.] Plaintiff was noted to have a minimal distractable tremor in his right hand which was improving. [R. 500.]

Dr. Fishburne also examined Plaintiff on April 25, 2013, and noted no functional limitation on Plaintiff's work-related activities. [R. 18.] Dr. Fishburne noted that Plaintiff, at the time, was working 20 or fewer hours per week doing self-contracting. [R. 478.] It was noted that Plaintiff first sought mental health treatment in January 2013 and had just begun seeing an individual therapist two weeks prior to his examination. [*Id.*] Plaintiff reported that the felt limited because "he feels that his arms are heavy, shakes, and [he] has memory problems." [*Id.*] On examination, Dr. Fishburne noted no abnormal motor activity; described Plaintiff's mood as nervous and depressed; and noted his attention and concentration to be grossly within normal limits. [R. 479.] Dr. Fishburne also noted that Plaintiff's short-term memory was grossly within normal limits, and that his thinking was clear and goal oriented. [R. 480.] Dr. Fishburne did note mild difficulty performing verbal reasoning tasks and noted that Plaintiff's intelligence may fall in the mild mental retarded range of abilities. [*Id.*] Dr. Fishburne also noted that, should Plaintiff qualify for financial benefits, he may require the assistance of a responsible adult to manage those benefits if he is determined to be mentally retarded. [*Id.*]

Treatment notes from Dr. Mary Paugh Blackmon ("Dr. Blackmon"), MUSC, dated November 19, 2013, indicates that Plaintiff became upset in December 2012 because his children did not have the Christmas presents he wanted them to have and, ultimately, had an episode of leg/arm shaking. [R. 613.] A full neurological work up was negative and Plaintiff recognized that the episode was likely due to built up stress. [*Id.*] Plaintiff denied having any other episodes since that time. [*Id.*] Dr. Blackmon noted that Plaintiff had

normal gait; and no psychomotor agitation ("pma") or psychomotor retardation ("pmr"). [*Id.*] A review of Plaintiff's subsequent medical records, particularly his outpatient records dated November 2013 through September 2014, present no discussion of Plaintiff's tremors or any limitations caused by the tremors.

### *Discussion*

The Administration has provided a definition of RFC and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule....

SSR 96–8p, 61 Fed.Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted). The RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545. *See id.* Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy. *Id.*

Additionally, the Administration has determined that in assessing RFC, the ALJ

must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.) Age and body habitus (i.e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant]'s medically determinable impairment(s) and related symptoms) are not factors in assessing RFC....

*Id.* at 34,476. When "determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental capacity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." *McGuire v. Astrue*, C/A No. 5:07–254, 2008 WL 4446683, at *5 (S.D.W.Va. Sept. 26, 2008) (*quoting Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir.1996)). An RFC assessment reflects an individual's "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." S.S.R. 96–8p, at *2.

As an initial matter, the Court is reminded that its review is limited to determining whether the ALJ applied incorrect law or failed to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir.1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir.1994). It is not within the purview of this Court to re-weigh evidence. *See* 42 U.S.C. § 405(g); *Perales*, 402 U.S. at 390, 401; *Johnson*, 434 F.3d at 653. If the ALJ's decision is supported by substantial evidence, the Court must affirm the decision.

Upon reviewing the ALJ's thorough and well-reasoned decision, the Court notes that the ALJ properly considered Plaintiff's functional limitations or restrictions in assessing his

work-related abilities. The ALJ noted that, while Plaintiff's tremors, which improved when he was distracted, may have been psychosomatic, his mental examinations were largely normal. [R. 17.] Additionally, Plaintiff presented no evidence to dispute the ALJ's finding that Plaintiff was capable of "frequent" fingering. Curiously, Plaintiff did not testify as to problems caused by his tremors. And, in his application for disability, Plaintiff noted his social activities as including texting, which would invariably involve frequent fingering. [*See* R. 209.]

It is ultimately Plaintiff's burden to provide evidence of disability. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (The claimant has the burden of establishing that he satisfies Steps One through Four of the Five Step Sequential Process.) The fact that Plaintiff disagrees with the ALJ's finding is an insufficient basis on which to remand this matter. The Court finds the ALJ properly applied the law and considered the facts of record. And, substantial evidence supports the ALJ's weighing and consideration of the medical opinions. As previously stated, "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." *Hays v. Sullivan*, 907 F.2d at 1456. Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court. *Craig v. Chater*, 76 F.3d at 589. Accordingly, in the absence of evidence which would require the ALJ to reconsider his finding, the Court determines that the ALJ's decision is supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, it is recommended that the decision of the Commissioner

be AFFIRMED.

**IT IS SO RECOMMENDED**.


                                              S/Jacquelyn D. Austin

June    , 2017                             Jacquelyn D. Austin

Greenville, South Carolina            United States Magistrate Judge